## The Louden Irrigating Canal Company et al. v. The Handy Ditch Company et al.

**1. Jurisdiction in Water Cases—Res Judicata.**

An adjudication of the priorities to the use of water for irrigation from the Big Thompson creek was duly had in the district court of Boulder county. Afterwards these proceedings, in the nature of a bill in equity to settle all priorities to the use of water from that stream, were commenced in the district court of Larimer county. *Held*, that the latter court erred in entertaining jurisdiction of the cause; and, further, that the decrees of the district court of Boulder county in the statutory proceeding were *res judicata*, at least in so far as they fix the priorities of those who were parties thereto and who participated therein.

**2. Concurrent Jurisdiction.**

As between courts of concurrent jurisdiction, the court first acquiring jurisdiction will retain it throughout.

*Appeal from the District Court of Larimer County.*

Appellees brought separate actions in the district court, which were afterwards consolidated, and this appeal is taken from the decree rendered in the consolidated actions.

The complaints are in the nature of bills in equity to adjudicate and settle all priorities to the use of water from the Big Thompson river. It is averred, in substance, that the defendants severally claim appropriations of water from the Big Thompson river prior in point of time to those claimed by the plaintiffs. Plaintiffs allege that said claims are excessive, and are in fact junior to the priority of each plaintiff.

To these complaints demurrers were interposed upon the following grounds: *First*, insufficient facts to constitute a cause of action; *second*, want of jurisdiction of the subject of the action.

These demurrers were sustained as to the first ground and overruled as to the second. Thereafter amended complaints were filed.

Among the defenses pleaded to the amended complaints are the following:

*First* defense: "Avers that irrigation district No. 4 did extend at the time when said district was created by law and hence hitherto has extended, and now extends, into the county of Boulder, for that a portion of the lands irrigated from ditches taking water from the tributaries of the Big Thompson have from and including the time of the creating of said irrigation district, been situated within the limits of the said county of Boulder; and said irrigation district No. 4 extends into the three counties of Boulder, Larimer and Weld in said state, and no others.

"2. That when said irrigation district No. 4 was created and established, and at all times since, and now, the district court in said irrigation district of the county in which the first regular term after the first day of December in each year soonest occurs, has been the district court of Boulder county.

"3. That heretofore and on the 21st day of October, 1881, in a certain proceeding in said Boulder county district court entitled "In the matter of a certain petition for the adjudication of the priorities of right to the use of water for irrigation in water district No. 4, which said suit or proceeding was duly and regularly instituted and then pending in said court pursuant to an act [here quoting title of act] approved February 23, 1881, Thomas R. Owen, Jr., Esq., was duly and regularly appointed referee of said court in said matter, to whom was referred the statements of claim on file in the said matter and the matter of taking evidence and reporting the same, making an abstract of the findings of same and preparing the decree in said adjudication. And said referee in all respects performed his duties as required by law and the order of court, and took all testimony offered in behalf of any party, claiming an appropriation of water for irrigation in said irrigation district and made report of the same together with an abstract and findings upon the same, and prepared a decree in said adjudication; that thereafter and on the 28th day of May, 1883, same being one of the regular juridical days of the May term, A. D. 1883, of said Boulder

county district court, said matter came on duly and regularly for final hearing and adjudication upon the report of said referee, as well as upon the exceptions filed in said matter, and after hearing the same the court duly entered in said matter its final adjudication and decree, establishing the priorities of right to the use of water for irrigation in water district No. 4. That all parties interested had due and proper notice of all proceedings had in said matter, as well before said referee as before said court; that the plaintiff as well as all of the defendants in this suit, were parties to said proceedings in said Boulder county district court, and entered their appearance therein and made proofs of their priorities; that no appeal was taken from said decree by any party thereto, nor did any party sue out a writ of error to cause said decree to be reviewed by the supreme court, but that said decree is now in full force and effect; that since the date of said decree hitherto, the waters flowing in the Big Thompson river, as well as in its tributaries, have been apportioned to the several ditches taking water therefrom, by the water commissioner of said water district pursuant to said decree.

" And said defendant avers that by virtue of the premises and the statute in that behalf, the said Boulder county district court obtained and ever since has retained exclusive jurisdiction for the purpose of hearing, adjudicating and settling all questions concerning the priority of appropriations of water between ditch companies and other owners of ditches drawing water for irrigation purposes from said Big Thompson river or its tributaries within the said water district, and all other questions of law and questions of right growing out of and in any way involved or connected therewith.

" Wherefore, this defendant says that the district court of Larimer county has no jurisdiction of the subject-matter of this action."

A demurrer to this defense was sustained by the district court. Other defenses were interposed, but as the opinion of

the court is in no way influenced by such defenses, they will not be further referred to.

The following provisions of the state constitution and statutes are necessary to a full understanding of the opinion of the court:

" The district courts shall have original jurisdiction of all causes, both in law and in equity."   Art. 6, sec. 11, Constitution of Colorado.

" For the purpose of hearing, adjudicating and settling all questions concerning the priority of appropriation of water between ditch companies and other owners of ditches drawing water for irrigation purposes from the same stream or its tributaries within the same water district, and all other questions of law and questions of right growing out of or in any way involved or connected therewith, jurisdiction is hereby vested *exclusively* in the district court of the proper county; but when any water district shall extend into two or more counties, the district court of the county in which the first regular term after the first day of December in each year shall soonest occur, according to the law then in force, shall be the proper court in which the proceedings for said purpose, as hereinafter provided for, shall be commenced; but where said proceedings shall be once commenced, by the entry of an order appointing a referee in the manner and for the purpose hereinafter in this act provided, such court shall thereafter retain *exclusive jurisdiction* of the whole subject until final adjudication thereof is had, notwithstanding any law to the contrary now in force."   Sec. 19, Session Laws, 1879.

" Nothing in this act or in any decree rendered under the provisions thereof, shall prevent any person, association or corporation from bringing and maintaining any suit or action whatsoever hitherto allowed in any court having jurisdiction, to determine any claim or priority of right to water, by appropriation thereof, for irrigation or other purposes, at any time within four years after the rendering of a final decree under this act in the water district in which such rights may

be claimed. Save that no writ of injunction shall issue in any case restraining the use of water for irrigation in any water district wherein such final decree shall have been rendered, which shall effect [affect] the distribution or use of water in any manner adversely to the rights determined and established by and under such decree, but injunctions may issue to restrain the use of any water in such district not affected by such decree, and restrain violations of any right thereby established, and the water commissioner of every district where such decree shall have been rendered, shall continue to distribute water according to the rights of priority determined by such decree, notwithstanding any suits concerning water rights in such district, until in any suit between parties the priorities between them may be otherwise determined, and such water commissioner have official notice by order of the court or judge determining such priorities, which notice shall be in such form and so given as the said judge shall order." Sec. 34, p. 159, Session Laws, 1881.

Mr. H. N. HAYNES and Mr. E. A. BALLARD, for appellants.

Mr. A. H. DE FRANCE and Mr. WILLARD TELLER, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

After the district court had overruled a plea to its jurisdiction and a plea of *res judicata,* and before trial, the interposition of this court was sought by an application for the extraordinary remedy by prohibition. This writ was, however, denied, for the reason that the petitioners had an adequate remedy at law by appeal or writ of error to the final judgment of the district court, in case such judgment should be against the defendants or either of them. *The People ex rel. v. The District Court,* 11 Colo. 574.

The questions of jurisdiction and of *res judicata* each in-

volve a construction of certain provisions of our irrigation laws, and for convenience may be considered together.

The argument of counsel in support of the judgment of the district court may be briefly summarized as follows : The present action is in the nature of a bill of peace or an action of *quia timet*, and is quite analogous to an action to quiet title to real estate ; that the action was permissible in this class of cases prior to the enactment of the irrigation laws of 1879 and 1881; that this suit was commenced within four years next after the statutory decree, and that the statute gives any person the right to bring such a suit at any time within such period ; that the district court of Larimer county, in common with all other district courts of the state, was given jurisdiction by section 11, article 6, of the state constitution, " of all causes, both in law and in equity ; " and that the legislature is powerless to take away such jurisdiction, and that it has not attempted so to do; that the ditches involved in this suit are mostly in Larimer county, and nearly all the parties are residents of said county, and the district court of that county offered the most convenient forum for the trial of the present action ; that the legislation of this state bears within it evidence of an intention of the lawmaking body not to limit actions like this to the district court which may have jurisdiction of the statutory proceeding.

Reliance is also placed upon section 1786, General Statutes 1883, page 580, wherein permission is given the district court or judge to make rules " from time to time during the progress of the case." It is argued that it is evident from this language, and from the whole tenor of the act, and from the title, that only the statutory proceeding was in the legislative mind. Nothing in the title of the act, it is said, indicated an intention to deprive any court of jurisdiction, and even if such had been the intention of the legislature, such intention should have been clearly expressed in the title, as required by the constitution. The object of the section relating to jurisdiction, it is argued, was to avoid any possible conflict with respect to the proceeding therein pro-

vided for, and not to confer, for all time to come, exclusive jurisdiction upon any one court. Again, it is said that the very section relied upon as conferring exclusive jurisdiction refutes the contention, as it provides that the court shall retain jurisdiction "until," etc.; the argument being that the court in no event is to retain such jurisdiction after the termination of that proceeding.

In opposition to this argument, appellants contend that the 19th section of the act of 1879 by its terms vested jurisdiction exclusively in the district court of a particular county, and when any water district shall extend in two or more counties, the district court of the county in which the first regular term after the first day of December in each year shall soonest occur shall have such exclusive jurisdiction; the district court of Boulder county being such court on the admitted facts of this case.

The irrigation act of 1881, it is said, recognized and supplemented the exclusive jurisdiction of one court in the district, as provided by the act of 1879; that this is evidenced from the first section of the act of 1881, providing, as it does, for the filing of a statement of claim by the owner of any ditch " with the clerk of the district court having jurisdiction of priority of rights to the use of water for irrigation in such water district," and by the 4th section of the act, which provides that the owners of a ditch in an irrigation district may present " to the district court of any county having jurisdiction of priorities of right to the use of water for irrigation in such water district, according to the provisions of " the act of 1879.

It is urged that this act does not limit the exclusive jurisdiction to the statutory proceeding, but extends to the whole subject-matter of priorities of right to the use of water in such district; that the 22d section of the act provides for " application to the court having jurisdiction " by any party not offering evidence originally in the statutory proceeding; that these three sections show conclusively a continued legis-

lative purpose to exclude the jurisdiction of more than one court as provided by the act of 1879.

As to section 34 of the laws of 1881, specially relied upon by appellee, appellants say there are no words therein which in expressed terms or by implication repeal section 19 of the act of 1879.   The former, in the order here mentioned, it is claimed provides only that nothing in the act or in the decree rendered under it shall prevent any person " from bringing and maintaining any suit or action whatsoever hitherto allowed in any court having jurisdiction to determine any claim or priority at any time within four years after the rendering of a final decree."

It is urged that this language does not confer jurisdiction upon any court, but leaves the jurisdiction as fixed by the preëxisting law, and that it refers to such law so far as this subject is concerned.

It is also urged that there are many provisions of the section which clearly show such to have been the legislative intent, if considered in the light of familiar rules of construction.   For instance, it is said the continuing force and validity of such decree is for many purposes recognized, and that the legislature could not have intended that any other court of coördinate jurisdiction should, under this section, interfere with the distribution of water by the water commissioner under a decree previously rendered in the statutory proceeding; that a contrary construction would permit the several district and county courts to interfere with what had been previously and solemnly determined in the district court of Boulder county, thereby involving the distribution of water in hopeless uncertainty, and the water commissioner, Givens, in inextricable confusion.

This intention, it is said, is further manifested by the 28th section of the act, which provides that where testimony shall be taken in the statutory proceeding, the same shall be receivable in evidence in any subsequent proceeding; that this language is applicable to the present suit, the legislative understanding being that the action referred to would be

pending in the court where the former evidence is on file and readily accessible.

Counsel contend that this construction is in accordance with the principle governing courts of concurrent jurisdiction, requiring that the one first obtaining jurisdiction must be allowed to dispose of the controversy without interference from a coördinate court, and that the district court of Larimer county was without jurisdiction of the present controversy for any purpose, and for this reason it was not necessary and would not have been proper to have applied for a change of venue to the district court of Boulder county, as suggested in the argument of appellees.

It is also claimed that the previous decree is *res judicata* of the present controversy; that section 34 of the laws of 1881 was not intended to authorize a separate action by a party to the former proceeding to be brought against other parties thereto, but that the intention was simply to afford a concurrent remedy with that already provided.

We have given space to the leading, and, as we think, to all the salient, points in the argument of counsel, for the reason that the questions involved are of great importance, not only to the immediate parties, but also to many persons similarly situated with reference to decrees in other water districts.

Questions affecting the economical and orderly distribution of water for the purposes of irrigation in the arid region are not surpassed in importance by any controversies involving the property rights of individuals or communities. This importance is recognized by our state constitution, while the question of priorities and the economical adjudication of the same has from the first commanded a large share of legislative and judicial attention.

Early in the history of the state, the legislature, finding the ordinary processes of the law and the actions then known to the courts too expensive and also inadequate to meet the novel conditions incident to the appropriation of water for the purposes of irrigation, enacted what is known as the

"Irrigation Statute of 1879," the purposes of which act are concisely stated in its title, viz.: "An Act to Regulate the Use of Water for Irrigation and for Providing for Settling the Priority of Right Thereto, and for Payment of the Expenses Thereof, and for the Payment of all Costs and Expense Incident to Said Regulation of Use."

The main features of this act have withstood the test of experience and criticism, and are still the law of this state. At the next biennial session of the legislature the act was supplemented by such additional provisions as experience had demonstrated to be expedient, if not absolutely necessary to the welfare of our agriculturists, and the quiet, orderly and economical distribution of water. The latter act is entitled "An Act to Make Further Provisions for Settling the Priority of Rights to the Use of Water for Irrigation in the District and Supreme Courts, and for Making a Record of Such Priorities and for the Payment of Costs and Expense Incident Thereto." This act, as its title indicates, supplements and completes the act of 1879. The two together constitute a complete system of procedure that in operation has been found so salutary and free from unnecessary expense as to command the tacit indorsement of all subsequent legislatures.

One of the leading fundamental characteristics of this legislation is a provision for the appointment of a referee in each water district upon application by any party interested, and in case the judge cannot hear the evidence, it is made the duty of such referee to take testimony and present a decree to the district court determining the priorities to the use of water in the particular district in which he is acting. The referee, before proceeding to take testimony, is required to give notice by publication, and also by posting notices, of the time and place appointed for the taking of testimony.

The party or parties moving such an adjudication are also required to cause a printed or written copy of the notice published as aforesaid to be served on every person, association

or corporation shown by the statement of claim on file to be claimants of a right to use water in such water district.

The acts provide a complete system of procedure, with a right of appeal by any party whose rights are adversely affected by the decree, making only those parties who "represent one or more ditches, canals or reservoirs affected in common adversely to the interests of appellants;" thereby rendering it unnecessary to bring all parties into the appellate court, and requiring only so much of the evidence and proceedings to be certified to as may be necessary to determine the rights of those made parties to the appeal.

The acts also provide the manner in which any decree may be opened in the district court at any time within four years after the same shall have been rendered.

If this suit can be maintained, the benefits to be derived from an adjudication of water rights in the manner provided by statute will be of slight avail to protect the rights of water consumers.

There can be no misunderstanding of the contention of counsel or of the nature and necessary result of the doctrine announced by the district court; the effect being to declare all statutory adjudications as simply interlocutory, binding upon no one except for the time being, but with liberty to all interested parties to commence a new suit to quiet the title to water rights, although such rights have been adjudicated in the statutory proceeding.

Some idea of the expense and labor necessary to take the evidence and formulate a decree in some of our water districts may be gathered from the statement that in some districts, not only months, but years, have been consumed in doing the necessary work incident thereto, and we unhesitatingly say that a construction which will allow a party to such a proceeding to ignore the result therein reached, and the next day or the next year institute a new action for the purpose of readjudicating the rights already adjudicated, is so at variance, not only with the general intention and purpose of the acts of 1879 and 1881, but so contrary to the ordinary

rules covering decrees of courts, that it ought not to be indulged, if any other reasonable result can be reached.

The statutory proceeding is in the nature of an action *in rem*, and the well understood character and effect of judgments in such actions, as defined by the authorities, throw light upon many of the provisions of the acts of 1879 and 1881. Freeman on Judgments (4th ed.), sec. 120 *a*; Herman on Estoppel and Res Judicata, chap. 5.

The doctrine of priority to the use of water for irrigation was not at the time of the passage of these acts, and is not yet, fully developed. To have given the statutory decree at once the force and effect of a judgment *in rem* would have been contrary to the best interests of the state, which require an economical use of water in order that the largest acreage may be brought under cultivation. Lands when first irrigated require more water than after the soil has become thoroughly saturated by repeated flooding, and the exact amount required to properly irrigate a given tract of land can only be determined by experiment; hence the necessity for the various provisions of the statute allowing a decree to be opened within certain fixed periods after its rendition. A conclusive adjudication at a time when the practical application of the proceeding was a matter of conjecture might have been disastrous. To guard against results such as these, it is not unreasonable to suppose that the legislature would make some provision. And we think those portions of the statute relied upon by the district court to overthrow the plea of *res judicata* and to support its jurisdiction are clearly referable to an intent to provide against the conclusive character of the statutory proceeding for the period of four years, but in no way to interfere with the exclusive jurisdiction of the court first acquiring jurisdiction, or to be construed as giving permission to a party to such an adjudication to ignore the same and maintain an independent action, as is here attempted.

In the opinion of the court, the words of the 34th section, providing that actions may be brought "in any court having

Vol. XXII—8

jurisdiction," do not repeal the provision of the act of 1879 giving exclusive jurisdiction to a particular district court, but the "court having jurisdiction" is the court "first acquiring jurisdiction," as provided in section 19 of the act of 1879. Therefore, in view of the facts pleaded in the answer and admitted by the demurrer, the district court of Larimer county was without jurisdiction to entertain this action, and the demurrer should have been overruled. We are not called upon to determine, and we do not decide, what the effect would be in a cause commenced in a court other than the one designated by statute, if no proper objection is made in apt time.

And we are also of the opinion that the former proceeding, unless opened in the manner and within the time provided by other sections of the act, is *res judicata*, at least in so far as it fixes the priorities of those who were parties thereto and participated in such proceeding.

But one other matter remains to be considered, viz. the constitutional provision giving the district court "original jurisdiction of all causes, both in law and in equity." This certainly cannot be construed as giving every district court in the state jurisdiction in every cause without regard to the place where the transaction occurred, the location of the property, or the residence of the parties, and were a contrary construction admissible it would not avail these plaintiffs, as under the rule governing courts of concurrent jurisdiction, the one first acquiring jurisdiction will retain it throughout. *Haywood v. Johnson*, 41 Mich. 598; Wells on Jurisdiction of Courts (1880), chapter XIX.

"The leading general principle as to concurrent jurisdiction is that whichever court of those having such jurisdiction first acquires possession of a cause will retain it throughout. It has been observed that 'great caution should be exercised lest the powers of these coördinate courts should be brought into conflict, as it is apparent the evils of such collision would be of serious magnitude; and the safer, if not the only course is that each court shall never suffer itself to

indulge in a cause, or in regard to a subject-matter, over which another has exercised its jurisdiction.'" Wells on Jurisdiction, sec. 156.

The judgment of the district court is reversed and the cause remanded.

*Reversed.*