GAY *et al.* v. HICKS *et al.*

No. 2828.  Opinion Filed June 25, 1912.

Publication Withheld Until September Term, 1912.

(124 Pac. 1077.)

**WATERS AND WATER COURSES**—Injunction—Irrigation System—Parties—Misjoinder.  A petition for an injunction, the purpose of which is to restrain action by the state engineer and an applicant for water rights on a certain stream until a hydrographic survey could be made and the rights of all claimants determined, and which shows that petitioners had previous to the date of the filing of the application duly and lawfully appropriated to a beneficial use all of the waters of the said stream, but that no hydrographic survey nor judicial determination of their rights had ever been made, and which pleads that to allow the prayer of the applicant would be to destroy a long established irrigation system erected at a cost of $50,000, and that the applicant was not in good faith seeking such water rights for the purpose of putting the water applied for to a beneficial use, but merely for speculative purposes, states a cause of action; nor is the said petition vulnerable to a charge of either misjoinder of parties or improper joinder of causes of action because there is joined therein all of the parties claiming a right in and to the water along with the state engineer, and the relief asked against the latter is different from that demanded against his codefendant, the purpose shown being to hold the entire matter in statu quo until a survey and adjudication could be made, as required by the statute.

(Syllabus by the Court.)

*Error from District Court, Jackson County;*
*Frank Mathews, Judge.*

Action by Sanford Gay and others against H. L. Hicks and Ben Hennessey.  Judgment for defendants, and plaintiffs bring error.  Reversed and remanded, with directions.

*S. B. Garrett* and *W. C. Austin,* for plaintiffs in error.

*O. T. Smith* and *Joel M. Sandlin,* for defendant in error Hicks.

*Chas. West,* Atty. Gen. (*Chas. L. Moore,* Asst. Atty. Gen., of counsel), for defendant in error Hennessey.

DUNN, J. This case presents error from the district court of Jackson county brought by Sanford Gay and others as co-plaintiffs against H. L. Hicks and Ben Hennessey, the latter of whom is secretary of the Board of Agriculture and *ex officio* State Engineer. The action is brought to determine the respective rights of the parties to the suit, except the said State Engineer, in and to the waters of Turkey Creek, in Jackson county, and for an injunction restraining defendants in error from conducting certain proceedings, the purpose of which was to grant to the said H. L. Hicks a right or permit to the use of the waters of said stream in disregard as it is claimed of the rights of plaintiffs in and to the said water, based upon a claim of prior appropriation and beneficial use thereof. The petition of plaintiffs sets forth in effect that they were owners of certain land adjacent to said creek in the said county, a considerable portion of which was irrigable; that no hydrographic survey of the stream system had at any time been made, nor had the rights of the owners of the said land in and to the waters of the stream ever been adjudicated or determined. It then averred that the said defendant Hicks had caused notice to be published and had filed with the defendant Hennessey his application to appropriate seventeen cubic feet per second of the water of said stream, both surface and underflow, for irrigation purposes; that June 5, 1911, was fixed as the date when the application of the said defendant Hicks would be taken up and considered at the office of the said State Engineer in Oklahoma City. It was set forth that the plaintiffs had been using waters of the said creek for domestic, stock-raising, and irrigation purposes, beneficial in their character, for a long time prior to the filing of the application by the said defendant Hicks, and that they so desired to continue and use the same and extend their use for irrigation and other purposes; that the said defendant Hicks was attempting to appropriate the previously appropriated water which, if permitted, would greatly damage plaintiffs, for which they had no adequate remedy at law, and that the proposed investigation and action to be taken before the said State Engineer would result in a multiplicity of suits, and, should the application be al-

lowed, would permit a cloud to be placed upon the title to plaintiffs' lands, and greatly injure their property rights. It is further alleged that the plan proposed by the said defendant Hicks was impracticable, and that his purposes were not in good faith to utilize the water which was being put to beneficial uses by plaintiffs, but that he intended to speculate upon the increase in the value of land to which he was seeking to have the same applied. It is further set forth in the petition that in the year 1895 W. L. Fullerton, then being in the possession of certain lands on the said creek, constructed a dam across the same, and appropriated the water thereof for irrigation purposes under the laws of the state of Texas, while the said creek was in Greer county, which was at that time within the jurisdiction of that state; that he had also under the laws of the territory and state of Oklahoma duly filed his maps and plats, together with the location of his dam, head-gate, and main ditch, in the office of the register of deeds of Greer county, and thereby appropriated the same for irrigation purposes; that he had constructed dams. and ditches at an estimated expense of $50,000, and that there is no unappropriated flow of waters of the said creek at the point designated by the defendant Hicks, but that all of the said flow has been fully appropriated and applied to beneficial use; that, if the hearing called is had, the result thereof will be a great amount of useless litigation for the purpose of determining the rights of owners of the land, including these plaintiffs who are interested in and using the waters of the said creek. The prayer of the petitioners was that a temporary injunction be granted against the defendants restraining the defendant Ben Hennessey, State Engineer, from granting defendant Hicks the rights asked for in said petition, until such time as the rights of plaintiffs might be determined and declared as provided by law; that the court order and direct the State Engineer to make and furnish a complete hydrographic survey of the said Turkey Creek in order to determine the rights of plaintiffs and all others whose rights might become affected, and that upon a final hearing the defendants be permanently enjoined from interfering with the rights of plaintiffs, that they be prevented from appropriating

more of the said water than is shown to be due them, and that the rights of all parties in and to the said waters be declared as provided by law.

The foregoing sets forth substantially what are deemed to be the effect of the material averments of the petition and the relief asked. After the filing of the same, it was presented to the judge of the district court, who issued a temporary injunction, which, on the motion of defendants, was dissolved, but was afterward kept in force by a supersedeas bond, and the cause has been lodged in this court for review.

Two assignments of error are presented by plaintiffs to this court, the first of which alleges that the court erred in dissolving the temporary injunction for the reason that, under the averments of the petition, the flow of the stream does not exceed the quantity of water for which the said defendant Hicks has made application, and that plaintiffs are the owners of land adjacent to, on, and along said creek, and one of plaintiffs had long prior to said application and notice built a dam across said creek and an irrigation ditch, and had appropriated to beneficial use all of the natural flow of the said creek and the stream of water thereof in accordance with the laws of Oklahoma, and had been for a long time past, and was so using the same at the date of the filing of the said application, and the giving of the said notice; that plaintiffs have brought their action against the defendants to have their respective water rights adjudicated, and that there was not then and never had there been made a hydrographic survey of the water of the said stream, and that this was necessary before any award allotting water could be made by the said State Engineer. The second assignment sets out more fully the procedure taken and the acts done by Mr. Fullerton, one of the plaintiffs, to establish his irrigation system and to appropriate to a beneficial use the waters of said creek, and urges that, under the application of the said Hicks, no portion of the said waters could be awarded to him unless the said irrigation plant established at a cost of $50,000 should be destroyed. Counsel for defendant Hicks and the Attorney General on the part of the State Engineer have filed briefs in which a number of reasons are pre-

sented and argued as grounds for sustaining the action of the trial court, but they all finally resolve themselves into substantially two propositions: First, that the grounds set forth in the petition do not, under the statutes relating to the law of irrigation, state facts sufficient to justify the court in enjoining the applicant and the State Engineer from proceeding prior to a judicial determination of the rights of the different parties in and to the waters of the said stream; and, second, that there was an improper joinder of parties and causes of action.

The statutes, and those portions thereof relating to this subject, and necessary to be here considered, are as follows:

Section 3915, Comp. Laws 1909, provides:

"The unappropriated waters of the ordinary flow or underflow of every running stream or flowing river, and the storm or rain waters of every river or natural stream, canon, ravine, depression or watershed within those portions of the state of Oklahoma in which by reason of the insufficient rainfall, or by reason of the irregularity of the rainfall, irrigation is beneficial for agricultural purposes, are hereby declared to be the property of the public, and may be acquired by appropriation for the uses and purposes and in the manner as hereinafter provided."

Section 3923, *Id.*, provides:

"Beneficial use shall be the basis, the measure, and the limit of the right to the use of water, and all waters appropriated for irrigation purposes shall be appurtenant to specified lands owned by the person or persons claiming the right to use the water, so long as the water can be beneficially used thereon. Priority in time shall give the better right. In all cases of claims to the use of water initiated prior to the passage of this act, the right shall relate back to the initiation of the claim, upon the diligent prosecution to completion of the necessary surveys and construction for the application of the water to a beneficial use. All claims to the use of water initiated after the passage of this act shall relate back to the date of receipt of an application therefor in the office of the State Engineer, subject to compliance with the provisions of this act, and the rules and regulations established thereunder."

Section 3932, *Id.*, provides:

"The State Engineer shall make hydrographic surveys and investigations of each stream system and source of water supply in the state beginning with those most used for irrigation,

obtaining and recording all available data for the determination, development and adjudication of the water supply of the state. * * * "

Section 3933, *Id.*, provides:

"Upon the completion of such hydrographic survey of any stream system, the State Engineer shall deliver a copy thereof together with copies of all data necessary for the determination of all rights to the use of the waters of such system, to the Attorney General who shall within sixty days thereafter enter suit on behalf of the state for the determination of all rights to the use of such water, and shall diligently prosecute the same to a final adjudication: Provided, that if a suit for the adjudication of such rights shall have been begun by private parties, the Attorney General shall not be required to bring suit; Provided, however, that the Attorney General shall intervene in any suit for the adjudication of rights to the use of water on behalf of the state if notified by the State Engineer that in his opinion the public interest requires such action."

Section 3934, *Id.*, provides:

"In any suit for the determination of a right to the use of the waters of any stream system, all parties who claim the right to use such waters shall be made parties. When any such suit has been filed, the court shall by its order, duly entered, direct the State Engineer to make or furnish a complete hydrographic survey of such stream system as hereinbefore provided, in order to obtain all data necessary to the determination of the rights involved. * * * "

Section 3936, *Id.*, provides:

"Upon the adjudication of the rights of the use of the waters of a stream system, two or more certified copies of the decree shall be prepared by the clerk of the court, at the cost of the parties, one copy shall be filed in the office of the State Engineer and the other in the office of the register of deeds of the county or counties in which such stream system is situated. Such decree shall in every case declare, as to the water right adjudged to each party, the priority, amount, purpose, place of use, and, as to water used for irrigation, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority."

Section 3937, *Id.*, provides:

"Any person hereafter intending to acquire the right to the beneficial use of any water, shall, before commencing any construction for such purposes, or before taking the same from

any constructed works, make an application to the State Engineer for a permit to appropriate in the form required by the rules and regulations established by him. Such rules and regulations shall, in addition to providing the form and manner of preparing and presenting the application, require the applicant to state all the data necessary for the proper description and limitation of the right applied for, as to the amount of water and periods of annual use, together with such information, maps, field notes, plans and specifications as may be necessary to show the method and practicability of the construction and the ability of the applicant to complete the same. All such maps, field notes, plans and specifications shall be made from actual surveys and measurements, and shall be retained in the office of the State Engineer after the approval of the application. The State Engineer may require additional information not provided for in the general rules and regulations, in cases involving the diversion of 500 cubic feet of water per second, or more, or the construction of a dam more than ten feet high from the foundation. The owners of works proposing to store or carry water in excess of their needs for beneficial use, may make application for such excess, and shall be held as trustees of such right for the parties applying the water to a beneficial use; and shall be required to furnish the water for such parties at reasonable rates for storage, or carriage, or both, as the case may be."

Section 3939, *Id.,* provides:

"Upon the filing of an application which complies with the provisions of this act and the rules and regulations established thereunder, the State Engineer shall instruct the applicant to publish notice thereof, in a form prescribed by him, in some newspaper of general circulation in the stream system, once a week for four consecutive weeks. Such notice shall give all essential facts as to the proposed appropriation, among them, the places of appropriation and of use, amount of water, the purpose for which it is to be used, name and address of applicant and the time when the application will be taken up by the State Engineer for consideration. Proof of publication as required, shall be filed with the State Engineer within sixty days from the date of his instructions to make publication. In case of failure to file satisfactory proof of publication in accordance with the rules and regulations applicable thereto, within the time required, the application shall thereafter be treated as an original application filed on the date of receipt of proofs of publication in proper form."

Section 3940, *Id.,* provides:

"Upon the receipt of the proofs of publication, the State Engineer shall determine from the evidence presented by the parties interested, from such surveys of the water supply as may be available, and from the records, whether there is unappropriated water available for the benefit of the applicant. If so, he shall indorse his approval on the application, which shall thereupon become a permit to appropriate water, and shall state in such approval the time within which the construction shall be completed, not exceeding five years from the date of approval, and the time within which the water shall be applied to a beneficial use, not exceeding four years in addition thereto."

Section 3941 *Id.,* provides:

"If, in the opinion of the State Engineer, there is no unappropriated water available, he shall reject such application. He shall decline to order the publication of notice of any application which does not comply with the requirements of the law and the rules and regulations thereunder. He may also refuse to consider or approve an application or to order the publication of notice thereof, if, in his opinion, the approval thereof would be contrary to the public interest. Any applicant may appeal from such decision of the State Engineer, or from any other decision by him which denies a substantial right, within sixty days from the date thereof, to the district court of the county in which the proposed place of diversion or storage is situated. In the absence of such appeal, the decision of the State Engineer shall be final."

The averments of the petition, as is seen, disclose that plaintiffs have devoted to a beneficial use all of the waters of the said creek, and this prior to the time the said defendant Hicks made his application. From the statute it is seen that the diligent prosecution by plaintiffs to the completion of their system of irrigation as established for the purpose of applying the water to a beneficial use related back to the initiation of their claim, and gave exclusive right to the use of the water as against all subsequent applicants. The authority of the State Engineer is administrative, and not judicial; and hence he has no power to impair vested rights, nor would his decision as to what the existing rights are be conclusive. Any action taken by him would be open to collateral attack in court by injunction or other process, as would also the action of the defendant Hicks, should he be authorized to take water from the said stream. 2 Weil, Water

Rights (3d Ed.) secs. 1193, 1194; *Willey et al. v. Decker et al.,* 11 Wyo. 496, 73 Pac. 210, 100 Am. St. Rep. 939, and cases therein cited.   Thus appears the inherent weakness and inde-cisive character of any right or privilege granted by the State Engineer prior to judicial action, and the provisions of sections 3933 and 3934, *supra,* of the statutes are intended in their scope to fix finally and definitely the rights of all interested parties in and to the waters of any stream in question; the purpose of these statutes being to secure a decree which shall be conclusive and final and not subject to collateral attack.   2 Wiel on Water Rights, sec. 1233; *Farmers' Union Ditch Co. et al. v. Rio Grande Canal Co. et al.,* 37 Colo. 512, 86 Pac. 1042.

In *Louden Irrigating Canal Co. et al. v. Handy Ditch Co. et al.,* 22 Colo. 102, 43 Pac. 535, it is said:

"Some idea of the expense and labor necessary to take the evidence and formulate a decree in some of our water districts may be gathered from the statement that, in some districts, not only months, but years have been consumed in doing the neces-sary work incident thereto."

From the foregoing it will be seen that a protracted investi-gation and litigation involving many parties, and not only one action, but many, is almost, if not quite, certain to result from an order made by the State Engineer granting the permit prayed, and that at the conclusion thereof and the making of the order no final determination of the controversy would have been at-tained.

In this connection it is also to be noted that under section 3941, Comp. Laws 1909, *supra,* which provides for an appeal, this remedy, it seems, is open to the applicant only, and not to the protestant whose rights are likely to be invaded, so that, as a result of the procedure sought to be taken, should the award be made as against these plaintiffs at the instance of the defend-ant Hicks, the rights of none of the parties would be finally es-tablished, and the defendant would have naught as a result there-of that he did not enjoy before the hearing by the mere filing of his application, and a necessity for an adjudication of the rights of all in the district court would still exist, and the long road over which they would have previously traveled would again be

before them. It is said in the case of *Hallet v. Carpenter et al.,* 37 Colo. 30, 86 Pac. 317:

"It is contrary to the principles of equity and good sense to compel parties to engage in two suits at law or equity when the whole matter can be determined in one. Equity as well as good conscience abhors a multiplicity of actions."

See, also, *Maloney et al. v. King et al.,* 30 Mont. 414, 76 Pac. 939. An investigation of the authorities passing upon questions of water rights under the common law as well as law of usage and custom, which has grown up in the western states, and the statutes passed by the federal and state governments, discloses that the determination of water rights has been fraught with much perplexity and difficulty. In so far as it at present seems possible, the statutes of this state have a strong tendency to simplify the whole matter by providing in the first instance (section 3932) for the State Engineer to make a hydrographic survey and investigation of each stream system in the state, beginning with those most used for irrigation, and then providing that, as rapidly as such survey is made of any system, a copy of the same, accompanied by all data necessary for the determination of all rights (section 3933), shall be delivered to the Attorney General, who is required within 60 days thereafter to enter suit on behalf of the state for the determination of the rights in and to the water. Its importance is deemed such that he is required by positive mandate to diligently prosecute the same to a final adjudication. That private parties as in the present instance have the right to begin suit is also provided, with authority in the Attorney General on the opinion of the State Engineer to intervene. Section 3934, *Id.,* provides for the making of parties in the determination of a right to use waters of any stream all who claim any interest therein, and, on the filing of any such suit, it is made the duty of the court to enter an order directing the State Engineer to furnish a complete hydrographic survey of the stream system, in order to obtain all data necessary to the determination of the rights involved, and the costs of this proceeding are made charges against each of the private parties involved. Herein, with jurisdiction of the whole subject, with all parties before it and with all knowledge available, is adjudicated

in court to a final determination the rights of all interested. Herein is rendered a decree which definitely fixes these rights and upon which all parties may act with certainty for the future. A copy of the decree thus made is ordered to be filed in the office of the State Engineer and in the office of the register of deeds of the county where the stream system is situated, and it is provided (section 3936) that the said decree "shall in every case declare as to the water right adjudged to each party, the priority, amount, purpose, place of use, and as to water used for irrigation, the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and its priority." It is manifestly intended that this procedure should take place before the procedure provided for in the succeeding sections. This purpose is gleaned, not only from the ineffectiveness of any permits or rights which might be asserted upon any order made by the State Engineer, but also from a mature consideration and reading of the statute as a whole. Section 3937, *Id.*, which provides for the application to the State Engineer by any person intending to acquire the right to the beneficial use of any water, succeeds those provisions which provide for the hydrographic survey, the filing of the same with the Attorney General, and action thereon by him, as well as actions by private parties based upon the hydrographic survey made by the State Engineer on the order of the court, and also the provision that a copy of the decree showing the rights already vested should be filed in the office of the State Engineer; thereby, in our judgment, showing a manifest intention on the part of the Legislature to have these things precede the futile and vexatious act of the State Engineer on hearings before him, granting permits without them, the manifest effect of which would be to cloud titles, and afford a fruitful source of litigation. After all of the provisions of the statute providing for the determination of the rights of parties and the filing of evidence thereof with the State Engineer, section 3937, *Id.*, follows, and provides for the making of applications before the State Engineer for permits to appropriate water. Publication thereof is required (section 3939, *Id.*) and section 3940, *Id.*,

provides for a hearing, and requires the State Engineer to determine from the evidence presented by the parties interested, from the surveys of the water supply, and from the records whether there is unappropriated water available for the benefit of the applicant. In our judgment the records referred to relate at least to the decrees which fixed finally the rights of other users of the water of the stream in question. Until these rights are determined and finally adjudicated, it is manifest that a subsequent applicant could get no enforceable interest in the stream. The question of the amount of appropriated water would and could be determined finally only in the judicial proceeding. Section 3941, *Id.*, provides that, if in the opinion of the State Engineer there is no unappropriated water available, he shall reject such application, and, in order for him to know this, it is, as we have seen, essential that it first be judicially determined. So that, in our judgment, in order that there may be an orderly procedure for the determination of the rights involved, it is necessary that a survey and adjudication precede action by the State Engineer further than accepting the application to fix priority, and a petition setting up facts shown in the one filed herein seeking to restrain an applicant for water rights and the State Engineer until the question of priorities and the quantity of water beneficially applied has been judicially determined, is not vulnerable to a general demurrer.

Nor in our judgment is there any improper joinder of parties. Section 3933, *Id.*, as we have seen, provides for a suit for the adjudication of these rights by private parties, which relieves the Attorney General of bringing suit. Section 3934, *Id.*, provides that in any suit (which would include an action brought by the Attorney General or by private parties) all parties who claim the right to use such water shall be made parties. This in our judgment determines the question of parties. Until all of the parties who have rights or who claim rights in and to the use of the water of this stream are before the court, it can render no decree which will affect them, and on the remission of this case to the trial court, should it develop that there are other parties interested in this litigation, and who are not parties to

this suit, they may be made so to the end that the decree finally entered may be final and determine the extent of the interests of all. And to hold the matter *in statu quo* until this could be done it was proper to stay action by the State Engineer and the defendant Hicks.

The order of the court dissolving the temporary injunction is accordingly reversed, and the case remanded to the trial court, with directions to proceed in accordance with the mandates of the statutes as the same are construed in this opinion.

TURNER, C. J., and HAYES and KANE, JJ., concur; WILLIAMS, J., absent, and not participating.