OWENS v. SNIDER *et al.*

No. 5454.    Opinion Filed December 7, 1915.

(153 Pac. 833.)

1. **WATERS AND WATER COURSES—Irrigation—Appropriation of Water—Conditions Precedent—Hydrographic Survey and Adjudication.** The petition for injunction alleged that plaintiff had been granted a permit or license by the secretary of the

State Board of Agriculture, who was **ex officio** State Engineer, to appropriate 530 gallons of water per minute from Sandy creek, a spring branch, the same being the entire flow of said stream, to the exclusion of all others through whose land it ran, and prayed that defendants, who were such landowners, be enjoined from taking any water from the stream for purposes of irrigation. The proof showed that no hydrographic survey, as provided for by law (section 3639, Rev. Laws 1910) had been made, and that no suit had been brought (section 3640, Rev. Laws 1910) to determine "all rights to the use of the waters," and no decree rendered (section 3642, Rev. Laws 1910), fixing and declaring "the water rights adjudged to each party, the priority, amount, purpose, place of use," and the lands to which it should appertain, prior to the issuance of the permit. The proof also showed that there was more flowing water in the stream, in excess of plaintiff's entire claim, than defendants were appropriating, or prepared to appropriate. The injunction was denied. **Held,** that there was no error in denying the injunction, because the hydrographic survey of the stream and its system, and an adjudication in court, as provided by law, were conditions precedent to the granting by the State Engineer of a valid permit, authorizing plaintiff to appropriate a fixed amount of the available water of the stream, to the exclusion of all other owners of irrigable lands, through which it meandered, and who were claiming the right of appropriation.

2. **SAME—Irrigation—Permit to Appropriate Water—Collateral Attack.** Such permit was open to collateral attack.

3. **SAME—Irrigation—Appropriation of Water—Injunction.** The evidence was sufficient to show that the stream afforded sufficient water to supply defendants, in excess of the amount claimed by plaintiff, and would therefore defeat the right to an injunction, even if plaintiff's permit had operated as a valid prior appropriation.

(Syllabus by Brewer, C.)

*Error from District Court, Harmon County;*
*Frank Mathews, Judge.*

Action by W. L. Owens against Albert Snider and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. C. Austin* and *C. A. Hatch,* for plaintiff in error.

*A. M. Stewart, Counts & Counts,* and *Gray & McVay,* for defendants in error.

Opinion by BREWER, C. This suit was brought by the plaintiff in error in the district court of Harmon county for the purpose of obtaining an injunction to prevent defendants from taking water for purposes of irrigation from Sandy creek, which is a small stream, fed by springs and meandering through Harmon county and across and through the lands of plaintiff, Owens, and also the lands of defendants and various other landowners, not parties to the suit. The plaintiff, for a cause of action, set out that he was, on July 25, 1911, awarded a license or permit from the secretary of the Board of Agriculture, who was acting as *ex officio* State Engineer; that said license was issued upon application theretofore made, which was accompanied by maps and surveys, made by a private surveyor or engineer, showing the plaintiff's irrigable lands, and that Sandy creek flowed through the same, and that its entire flow amounted to 530 gallons of water per minute; that upon such application and showing, the said permit or license gave to plaintiff the exclusive right to divert and appropriate to the beneficial use of his own land, 530 gallons of water per minute, the same being the entire flow of the stream. The petition further alleged that defendants, who were landowners further up the stream, had installed a pump and were taking water from Sandy creek, so as to interfere with plaintiff's rights in preventing him from obtaining therefrom the waters to which he was entitled under his permit, and that therefore they should be prevented from so doing by an injunction. Defendants, among other things, challenged the legality of plaintiff's license or permit, on the ground that it had been prematurely issued, when the *ex officio* State Engineer was without authority so to do, and that therefore it was without the effect of

giving to plaintiff the right to appropriate the amount of water named, to the exclusion of upper proprietors, for the reason that no hydrographic survey had been made of the stream and its system, by which the available supply of water had been ascertained, nor had the rights and priorities of the various parties interested, or who as landowners might be interested, been determined by a judicial decree, in pursuance of the law. Defendants further claimed that even if plaintiff was entitled to the amount of water he claimed, to the exclusion of all others, yet that the stream afforded water far in excess of the amount he claimed, and far in excess both of his claim and the amount of water defendants had prepared to appropriate and were appropriating. At a trial of the issues before the court, after hearing the evidence, the court found the issues in favor of defendants and refused an injunction, and filed the following findings of fact and conclusions of law:

"It is difficult to draw a distinction between the case at bar and the Gay Case, 33 Okla. 675, 124 Pac. 1080, recently decided by our Supreme Court on appeal from Jackson county, but we are of the opinion that this case involves the same principle as the Gay Case, in reverse order. An injunction was allowed in the Gay Case to enjoin the State Engineer from granting water rights to certain parties until there had been a complete hydrographic survey as required by the statutes, and a judicial determination of the respective rights of all parties to the water in Turkey creek, and in the case at bar, the plaintiff, having obtained a permit from the State Engineer to appropriate water of a certain amount from Sandy creek, now seeks to enjoin the defendants from taking any water from this stream, alleging that he had a prior right to the entire flow, having appropriated the entire flow. In the Gay Case the Supreme Court held that the

plaintiff was entitled to the injunction as prayed for, which prayer was as follows: 'That a temporary injunction be granted against the defendants restraining the defendant, Ben Hennessey, State Engineer, from granting defendant Hicks the rights asked for in said petition, until such time as the rights of plaintiffs might be determined and declared as provided by law; that the court order and direct the State Engineer to make and furnish a complete hydrographic survey of the said Turkey creek in order to determine the rights of plaintiffs and all others whose rights might become affected. * * *' And the principal assignment of error was: 'That there was not then, and never had there been made, a hydrographic survey of the water of the said stream, and that this was necessary before any award allotting water could be made by the said State Engineer.' The contention of the defendant, briefly stated, was: 'That the grounds set forth in the petition do not, under the statutes relating to the law of irrigation, state facts · sufficient to justify the court in enjoining the applicant and the State Engineer from proceeding prior to a judicial determination of the rights of the different parties in and to the waters of the said stream. * * *' In the Gay Case the Supreme Court, in holding not only that a hydrographic survey` of the stream must be made by the State Engineer, further holds that there must be a judicial determination of all the claimants' rights before the rights of any one of the parties are fixed finally, and definitely.

"Now, what right did the plaintiff, W. L. Owens, acquire in this case by virtue of there having been issued to him a permit by the State Engineer to take water from this stream, and how far is this right so acquired conclusive against the defendants in this case? It is true that the evidence shows that the defendants appeared before the State Engineer with a number of witnesses and protested his granting to the plaintiff, Owens, the permit under which he is now operating, and that the State Engineer decided against them; but I don't think that this decision of the State Engineer is conclusive

on the rights of the defendants, because as said by our Supreme Court in the Gay Case, in holding that the statutes must be complied with to procure a judicial determination of the rights of all the parties: 'Thus appears the inherent weakness and indecisive character of any right or privilege granted by the State Engineer prior to judicial action, and the provisions of sections 3933 and 3934, *supra*, of the statutes are intended in their scope to fix finally and definitely the rights of all interested parties in and to the waters of any stream in question; the purpose of these statutes being to secure a decree which shall be conclusive and final and not subject to collateral attack. * * * As a result of the procedure sought to be taken, should the award be made as against these plaintiffs at the instance of the defendant Hicks, the rights of none of the parties would be finally established, and the defendant would have naught as a result thereof that he did not enjoy before the hearing by the mere filing of his application, and a necessity for an adjudication of the rights of all in the district court would still exist. * * *'

"It is found by the court: (1) From the authority in the Gay Case, we must hold that the defendants in this case have not been concluded in their rights, if any they have, to take water from this stream merely because plaintiff has been granted a permit to the prior appropriation of a certain and definite flow of water from the same by the State Engineer. (2) That there has not been such a hydrographic survey of this stream as contemplated by the statutes. (3) There has been no judicial determination of the rights of the parties herein to appropriate the waters of this stream, as provided in sections 3932 and 3933, Snyder's Statutes. (4) While the evidence is indefinite as to the waterflow in this stream, as all of the measurements of same that have been submitted in evidence are crude and uncertain in results, yet the court finds as a matter of fact that the normal flow of said stream to be more than 1,000 gallons per minute, and that the limit of the amount attempted to be appropriated

by plaintiff is 530 gallons per minute, and the limit of the amount that can be appropriated by defendants, with their present system, is 250 gallons per minute.

"FRANK MATHEWS, *Judge*."

The principal contentions of plaintiff in error for a reversal of this case are: (1) Error as to the admission of testimony; (2) that the court erred in finding that the stream afforded more than 1,000 gallons of water per minute; (3) That the court erred in applying the rule announced in the case of *Gay v. Hicks, supra,* under which rule, broadly stated, the State Engineer has no right to issue a permit to an individual to appropriate a specific part of the waters of a stream, to the exclusion of others, until after a hydrographic survey and a decree of court has been made and rendered.

1. The admission of evidence that no hydrographic survey of the stream and its system had been made as provided by law was not only competent, but highly material and important. As said in *Gay et al. v. Hicks, supra:*

"The authority of the State Engineer is administrative, and not judicial; and hence he has no power to impair vested rights, nor would his decision as to what the existing rights are be conclusive. Any action taken by him would be open to collateral attack in court by injunction or other process, as would also the action of the defendant Hicks, should he be authorized to take water from the said stream. 2 Weil, Water Rights (3d Ed.) sec. 1193, 1194; *Willey et al. v. Decker et al.,* 11 Wyo. 496 73 Pac. 210, 100 Am. St. Rep. 939, and cases therein cited."

The above case quotes from *Louden Irrigating Canal Co. et al. v. Handy Ditch Co.,* 22 Colo. 102, 43 Pac. 535, as follows:

"Some idea of the expense and labor necessary to take the evidence and formulate a decree in some of our water districts may be gathered from the statement that in some districts not only months, but years, have been consumed in doing the necessary work incident thereto."

Certainly, then, a purported survey of the flow of a stream made *ex parte* at the instance of plaintiff, upon a single occasion and at one place, would not in any sense be conclusive and binding on other landowners bordering on the stream. The question was, therefore, open to them to contradict its accuracy. *Boise Irrigation & Land Co. v. Stewart,* 10 Idaho, 38, 77 Pac. 25, 321. Under this head it is also complained that the evidence of defendants relative to the flow of the stream, and that such flow was sufficient, not only to provide plaintiff with the entire amount of water he claimed, but also to provide defendants with the water they had prepared to appropriate, was incompetent, and ought not to have been admitted, for the reason that the witnesses did not show sufficient qualifications, or that they pursued a process in their measurements by which an approximately correct result could be obtained, and that therefore the evidence had no probative effect, and should not have been admitted. We cannot agree with this contention. We have examined with care the statements of the surveyor employed by plaintiff, together with his methods used in measuring the volume of the stream as a basis for plaintiff's application. We have also examined the methods used by the witnesses who appeared and testified for defendants. We doubt very seriously if any of the witnesses for either party have shown themselves to be competent to make a hydrographic survey, which, as we understand the term, involves even more than a mere measurement of the volume of water; but, while the methods employed

by each set of witnesses were manifestly inaccurate and confessedly, at best, a mere approximation, we think the testimony of defendants' witnesses that is complained of had probative effect, and was properly received by the court and given such weight as he believed, under all the circumstances, it to be fairly entitled to receive.

This brings us to the next proposition:

2.   Our decision as to the competency of the evidence of defendants, as to the available water supply of the stream, decides this point; for, under this evidence, the court was fully justified in finding that the flow of the stream was at least 1,000 gallons per minute. These witnesses measured the stream at different places along its course, and their different measurements showed a volume of water much in excess of the amount found by the court. These measurements were made shortly before the trial. The measurements made by plaintiff's surveyor were made early in 1911; and it is quite possible that the flow of this stream had increased, inasmuch as there is some evidence that it had only become a running stream within very recent years.

3.   Neither can we agree with plaintiff in error that the decision of this court in *Gay v. Hicks, supra,* is not controlling in its holding of the necessity of a hydrographic survey and a court adjudication. Plaintiff's contention, boiled down, is that this case does not fall within the rule, for the reason that plaintiff claimed to be the first applicant for water, which embraced an appropriation of all the available waters of the stream, and that therefore, as no other proprietor could possibly have any rights, a hydrographic survey and ascertainment would be unnecessary and superfluous. We think this contention more plausible than sound, and that the facts disclosed

here illustrate forcibly its unsoundness. To our mind, the controversy here shows the wisdom of requiring a hydrographic survey, and a determination of the various priorities and rights of the beneficial use of the waters of a stream, before a permit is granted. To illustrate, under the license set forth here, plaintiff claims the right to appropriate 530 gallons per minute. This is, according. to his maps and survey, the total available supply; yet the defendants, as upper proprietors of lands adjoining the stream, contend, and have introduced evidence to show, that the stream affords all the water they need over and above that claimed by plaintiff; in other words, that there is ample water to meet their wants, after plaintiff's have been fully met. The action of the State Engineer being subject to collateral attack, a similar claim could be set forth by any of the other proprietors along the stream, and a trial had, which would depend upon the proof offered at each of these hearings; and this conflict of claims may always be expected, and it is to prevent such, and to the end that reasonable certainty may be secured, that a hydrographic survey—by which the supply of water through scientific measurements and continued experiments may be ascertained—has been provided for, and which, once had, furnishes reasonably accurate foundations for apportioning the water to the various claimants. The question of their priorities and the right to appropriate a specific amount, in preference to others, must be determined by a suit brought for that purpose, which suit is provided for in the irrigation acts. Section 3640, Rev. Laws 1910. Of course, with such a survey, if it can be shown, in a suit for adjudication of the rights, that this stream only provides 530 gallons of available water per minute, and in such suit to settle the

rights of appropriation it should develop that plaintiff is prior in application and reduction of the water to a beneficial use, he would then be prior in right, and a decree would protect him. Until this is done, it may be expected that continual conflicts over the amount of usable water and the rights of appropriation from the stream will ensue.

We find no error in the judgment refusing the injunction (applying the rule of *Gay et al. v. Hicks,* which is a very lengthy case and must be read *in toto* to be fully comprehended), and this cause should be affirmed.

By the Court: It is so ordered.