**Elton C. TALLEY et al., Appellees,**

v.

**Otto CARLEY and Gaynelle Carley, husband and wife, Appellants.**

No. 46249.

Supreme Court of Oklahoma.

Dec. 17, 1975.

Rehearing Denied July 6, 1976.

Appellants, Otto Carley and Gaynelle Carley, husband and wife, seek to set aside Jackson County District Court's order finding that Water Resources Board's final order of priorities to water from Bitter Creek, a tributary of Salt Fork of the Red River, is binding upon them. They contend that they were not given notice required by due process provisions of both State and Federal Constitutions. Judgment of the trial court reversed and cause ordered remanded to Water Resources Board with directions to afford appellants a hearing so that they might establish their priority rights to water from Bitter Creek under 82 O.S. § 1–A, et seq.

Ivester & Braddock, Altus, for appellees.

William W. Talley, Hobart, Godlove, Joyner, Godlove, Garrett, Meyers & Davis, Inc., Lawton, Nicklas, Parrish, Saenz & Wade, Inc., Lawton, for appellants.

BARNES, Justice:

Bitter Creek, a tributary of Salt Fork of the Red River, runs through land owned by Appellees, Elton C. Talley, Olevia Talley Robertson, Alan H. Talley, Lee Roy Neher and John Neher, and land owned by Appel-

lants, Otto Carley and Gaynelle Carley, husband and wife.

Appellants' land is upstream approximately one mile north of the land owned by Appellees. Appellants and Appellees both assert beneficial use of water from Bitter Creek prior to 1963.

It is conceded that the records of the Water Resources Board contained records of the following applications and reports from Appellant, Otto Carley:

Application No. 52–61 on March 6, 1952, with the predecessor to the Water Resources Board for irrigation of 50 acres of land in the Southwest Quarter of Section 11, Township 2 North, Range 21 West, Jackson County, from Bitter Creek. On December 23, 1953, Appellant reported irrigation of 140 acres of cotton, and on February 11, 1956, Appellant reported irrigation on 50 acres for 1953, 1954, and 1955. Appellant filed Application No. 53–271 on March 2, 1953, to irrigate 160 acres from Bitter Creek, giving the description as South Half of Section 11, Township 2 North, Range 21 West, Jackson County. On February 11, 1956, Appellant reported irrigation of 70 acres of crops in 1954 and 130 acres in 1955. Appellant filed Application No. 52–122 for the irrigation of 80 acres of land from Bitter Creek described as being in the Southwest Quarter of Section 11, Township 2 North, Range 21 West, Jackson County. Finally, in a water-use questionnaire dated December 26, 1953, Appellant reported irrigation unit in use beginning May 1, 1952, with water use beginning June 1, 1952, irrigating 140 acres of cotton, and on questionnaire dated February 11, 1956, Appellant showed irrigation of 80 acres of cotton in 1953, 1954, and 1955.

In 1963 the Oklahoma Legislature passed an Act (82 O.S. § 1–A et seq.) which substantially revised the law relating to water rights and set forth a new procedure for establishing vested water rights. Up to that time there was considerable conflict in Oklahoma law regarding appropriator's rights and riparian owner's rights. See Professor Joseph F. Rarick's article in Volume 22 of the Oklahoma Law Review, at page 1, where he stated:

"In the first place, Oklahoma had, by statute, adopted two systems of regulating the use of stream water. The riparian system which emphasizes the rights of those who own land on a stream had been adopted by the first Territorial Legislature. In this system, aside from prescriptive uses, the time of origin of use is completely immaterial. Several years later, the Territorial Legislature adopted the prior appropriation system which had become dominant in the West. In this system the relative rights of water users are controlled by the date of the origin of the appropriation. The earliest user has the best right to take a fixed quantity or rate of flow. Under this system, a user need not own riparian land.

"From even this abbreviated explanation, it is obvious that these two systems are, in their pure forms, highly incompatible when one attempts to apply them to the same stream at the same time.

"There were prior to 1963, no legislative guidelines to indicate how conflicts between the systems were to be reconciled. * * *" (Footnotes omitted).

The 1963 statute was intended to provide a comprehensive method for establishing water priorities. Early Oklahoma cases held that a hydrographic survey and judicial determination of the rights of all parties to the stream was a condition precedent to the issuance of a permit. See *Gay v. Hicks*, 33 Okl. 675, 124 P. 1077, and *Owens v. Snider*, 52 Okl. 772, 153 P. 833. But in the case of *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District*, Okl., 464 P.2d 748, which was decided after the 1963 statute was in effect, we held that the requirements for hydrographic survey and adjudication proceedings were procedural requirements which were eliminated by the 1963 amendments.

Thus, prior to 1963, Appellants and Appellees were appropriators whose rights were subject to being established and priorities determined, if the statutory provisions of the pre-1963 laws had been complied with. It is conceded that a hydrographic survey was never accomplished, so no rights were established by Appellants or Appellees under the previous law. The passage of the 1963 amendments, 82 O.S. § 1–A et seq., established and recognized the following priorities:

1. Water put to beneficial use prior to November 15, 1907. Priorities shall date from the initiation of the beneficial use.

2. Previously adjudicated priorities. Priorities shall be dated as of the date assigned to them in adjudication decrees.

3. Priorities based upon applications for appropriations where the same shall have been perfected heretofore under the law heretofore applicable. Said priorities shall be dated as of the date of application therefor.

4. Priorities based upon applications for appropriations prior to the date of this Act where the same are perfected after the effective date of this Act. Said priorities shall date from the date of the application for the priority.

5. Priorities based on withdrawal of water by the United States.

6. Priorities based upon beneficial use prior to effective date of this Act and initiated on or subsequent to November 15, 1907. Said priorities shall date from the initiation of the beneficial use of that quantity of water. Provided that no priority based solely on this subdivision shall have priority over priorities which bear a priority date earlier than the effective date of this Act and which arise by virtue of compliance with the provisions of the first five subdivisions.

7. Priorities based upon beneficial use having to do with soil conservation sediment pools.

Appellants' and Appellees' priorities would have been determined under No. 6 above, i. e., beneficial use with priority dated from the initiation of the beneficial use.

The Oklahoma Water Resources Board was directed by 82 O.S. § 6 to make surveys and gather data and other information for the proper understanding and determination of all persons using water throughout this State for beneficial purposes in order to establish vested rights thereto. The pertinent parts of § 6 are as follows:

" * * * Such survey data and other information shall include, but shall not be limited to, the names and last known mailing address of all applicants or claimants for the use of water of record with the Board, including application number and date thereof, the legal description of the place of withdrawal and use, quantity of water applied for or claimed in gallons or acre-feet per year, purposes of use, amount of water actually put to beneficial use each year, and such information shall be compiled and made a matter of record in the office of the Board. *As soon as one or more county or counties and/or one or more stream systems have been surveyed, and the information compiled as herein provided, the Board shall carefully review the same and make an order listing the applicants or claimants who, in the Board's opinion from the information then available to it, are vested water rights holders by virtue of Section 2(b), H.B. 662, 29th Legislature.* Said order shall set out the priority date, place, purpose and volume of water used by each of the claimants or applicants. Provided that the said order shall be plainly marked 'Tentative Order establishing vested rights in such county or counties and/or stream systems' naming the county or counties and/or stream systems. As soon as the tentative order as determined by the Board is prepared, a copy

of said order shall be forwarded by registered or certified mail to each applicant or claimant to the use of water within the area in which vested water rights are to be determined and the following notice of public hearing shall be included therewith: * * *." (Emphasis ours)

In spite of the fact that the Board's own records, as previously noted, showed Appellants' beneficial use of various quantities of water, no priorities were assigned to Appellants in the tentative order. The notice of hearing on the tentative order and the notice and copy of the final order sent to Appellants were returned "not found," and no effort was made to give notice to the tenant farming and irrigating Appellants' land or to obtain Appellants' present address from him or from the local Soil Conservation Office.

Appellants concede that they did not have a vested priority that could not have been lost if the Board had followed the procedure set out in § 6 of the 1963 amendment, but they contend—and we agree—that in order for them to be deprived of their priorities which are provided for in the 1963 amendment, they must be given meaningful notice, and that the Water Resources Board must not ignore their own records in determining tentative and final priorities. There is no question but that Appellants would have been entitled to establish their priority under the schedule of priorities set out in the 1963 amendment, but not having been aware of the hearing they could hardly be found to have slept on their rights. It will be noted that the statute provides that a copy of the tentative order shall be forwarded by registered or certified mail to each applicant or claimant to use of the water. Further, the statute does not provide for mailing to the last known address of said claimant and on failure to deliver to the claimant that the job of notifying is completed. The statute provides for service on the claimant of the final order by depositing a copy of said final order in the post office, addressed to each claimant whose name and address is known to the Board. Thus, when the notices were returned to the Board with the notation "unknown," the Board was aware that Appellants were not notified as the statute intended. While neither the statute nor due process requires actual notice, due process does require the exercise of diligence in ascertaining the last known address for the purposes of mailing. The Board made no inquiry of Appellants' tenant or of the local A.S.C. Office to determine the Appellants' correct address. The requirements of due process were not met by this mailing. See *Bomford v. Socony Mobil Oil Co.*, Okl., 440 P.2d 713 (1968), where this Court stated in the third syllabus:

"The requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties having legal rights which might be directly and adversely affected thereby, and where the names and addresses of adverse parties are known *or are easily ascertainable*, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or Art. 2, Sec. 7 of the Oklahoma Constitution." (Emphasis ours)

See also *Grannis v. Ordean*, 234 U.S. 385, 394, 58 L.Ed. 1363, 1368, 34 S.Ct. 779 (1914); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–315, 70 S.Ct. 652, 94 L.Ed. 865, 872, 874 (1949); *Schroeder v. City of New York*, 371 U.S. 208, 211, 83 S.Ct. 279, 9 L.Ed.2d 255, 258 (1962); *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62, 66 (1965).

The Water Resources Board's determination of Appellants' priority rights in Bitter Creek is therefore a nullity, and the Trial Court is directed to dismiss Appellees' petition herein for the reason that it is based on said invalid order of priority as to Appellants. In order to determine Appellants' priority, it will be necessary to have

another hearing before the Water Resources Board, at which time Appellants must be afforded an opportunity to establish their rightful priority rights under 82 O.S. § 6.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, LAVENDER, SIMMS and DOOLIN, JJ., concur.

IRWIN, J., concurs in part and dissents in part.

BERRY, J., concurs in result.